William George BONIN, Petitioner–
Appellant,

v.

Daniel VASQUEZ, as Warden of San
Quentin State Prison; James Rowland,
Director of the California Department
of Corrections, Respondents–Appellees.

William George BONIN, Petitioner–
Appellant,

v.

Daniel VASQUEZ, as Warden of San
Quentin State Prison; James Rowland,
Director of the California Department
of Corrections, Respondents–Appellees.

Nos. 92–56299, 93–99000.

United States Court of Appeals,
Ninth Circuit.

July 16, 1993.

Michael H. Roquemore, Deputy State Public Defender, San Francisco, CA, for petitioner-appellant.

Esteban Hernandez, Supervising Deputy Atty. Gen., San Diego, CA, for respondents-appellees.

Before: WALLACE, Chief Judge, BRUNETTI and Alex KOZINSKI, Circuit Judges.

### ORDER

In these consolidated cases, Bonin, a California state prisoner facing a sentence of death, appeals from the district court's denial of his two petitions for habeas corpus relief pursuant to 18 U.S.C. § 2254. During the pendency of these appeals Bonin's appointed counsel, the California State Public Defender (Public Defender), filed a request to withdraw as attorney of record which we denied in an unpublished order. The Public Defender subsequently filed a motion for reconsideration, arguing that, because its own ineffectiveness may constitute grounds for relief, conflict of interest concerns mandate the appointment of new counsel. After additional briefing and further review, we adhere to our original denial of the Public Defender's request to withdraw, and we deny the motion for reconsideration.

### I

After a jury trial in Los Angeles, Bonin was sentenced on January 20, 1982, to death for the first degree murders of ten victims. On August 22, 1983, he was sentenced to death in Orange County for the first degree murders of four victims. On July 12, 1990, after his direct appeals failed and his requests for state habeas corpus relief were denied, Bonin filed a petition for a writ of habeas corpus in federal district court arising out of his Orange County convictions and sentence (Orange County case), and on February 7, 1991, from his Los Angeles convictions and sentence (Los Angeles case). The two cases, although not consolidated in the district court, were before the same district judge.

On April 19, 1991, following the Supreme Court's decision in *McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (*McCleskey*) (clarifying standards applicable to district court review of claims raised in subsequent habeas corpus petitions), the district court issued an order instructing Bonin to file any additional claims in either or both cases pending before the court by May 13, 1991. On May 17, 1991, Bonin filed a "First Amendment" to his Orange County petition, seeking to add eight new claims; the district court dismissed these additional claims, holding that they constituted an abuse of the writ. The court then denied Bonin's motion for reconsideration of the order dismissing the "First Amendment" in the Orange County case.

No attempt was made to add any claims to the Los Angeles case until December 24, 1991, when Bonin filed a motion proposing to add five new claims. On January 7, 1992, the district court dismissed Bonin's motion to amend the Los Angeles petition because (1) over seven months had passed since the May 13, 1991, deadline with no justification for the delay, and (2) the court held that the five "new" claims were identical to claims Bonin

previously had attempted unsuccessfully to add to the Orange County case.

Later in January, the district court conducted a three day evidentiary hearing in both cases. The court issued its Order and Opinion denying Bonin's Orange County petition on July 20, 1992. On August 18, 1992, Bonin filed a "Motion to Amend [Both] Petitions And For Relief From Judgment" setting forth six new claims that had never before been presented either on direct appeal, in state collateral proceedings, or to the district court. The court construed this pleading differently in the two cases: in the Orange County case, because the petition had already been denied, as a Federal Rule of Civil Procedure 60(b) motion for relief from judgment; in the Los Angeles case, because no final judgment had yet been entered, as a Federal Rule of Civil Procedure 15(a) motion to amend the petition.

On September 29, 1992, the district court issued an order stating that it would treat the Rule 60(b) motion in the Orange County case as tantamount to a second petition, the new claims were abusive, and Bonin would have to satisfy *McCleskey*'s "cause and prejudice" test before it would reach the merits of the claims. After Bonin had an opportunity to submit a supplemental brief on whether he could satisfy this test, the district court, on October 6, 1992, denied the Orange County 60(b) motion. On November 9, 1992, the district court denied the Rule 15(a) motion in the Los Angeles case and on the same day issued its Order and Opinion denying Bonin's Los Angeles petition. Bonin has appealed from the district court's orders in both cases.

## II

■ Because final judgment already had been entered in the Orange County case when Bonin first sought to raise six new issues, the district court properly construed Bonin's motion as a request for relief from the judgment pursuant to Rule 60(b). The district court was also correct in treating Bonin's motion in the Los Angeles case as an untimely Rule 15(a) motion to amend the pleadings. The alleged ineffectiveness in the Orange County case relates to the question whether Bonin can establish cause under

*McCleskey* for bringing six abusive claims. In the Los Angeles case, counsel's incompetence is alleged to be relevant to the determination whether the district court abused its discretion in denying the motion to amend. Because the two cases were in significantly different postures when the issue of present counsel's ineffectiveness was first presented, we will address the request to withdraw as it relates to each case separately.

### A.

Along with Bonin's supplemental brief on cause and prejudice filed with the district court in the Orange County case, the Public Defender asked to be relieved as counsel of record because of a conflict of interest stemming from the possibility that its own ineffectiveness in representing Bonin during his habeas proceedings might constitute the requisite "cause" for Bonin's failure to raise the six new claims in a timely fashion. The district court rejected the Public Defender's request, relying on *Coleman v. Thompson,* —— U.S. ——, —— – ——, 111 S.Ct. 2546, 2566–67, 115 L.Ed.2d 640 (1991) (*Coleman* ), for the proposition that attorney error establishes cause only if it rises to the level of ineffective assistance of counsel at a time when a petitioner is constitutionally entitled to counsel. The Public Defender had alleged the possibility that it may have been ineffective in pursuing either Bonin's state or federal habeas petitions. In denying counsel's request to withdraw in the Orange County case, the district court ruled that because "[t]here is no constitutional right to an attorney in state post-conviction proceedings," *id.* —— U.S. at ——, 111 S.Ct. at 2566, or in federal habeas corpus proceedings, *McCleskey,* 499 U.S. at —— – ——, 111 S.Ct. at 1470–71, *citing Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987) (*Finley* ), any alleged ineffectiveness on the part of the Public Defender could not constitute the requisite "independent constitutional violation," *Coleman,* —— U.S. at ——, 111 S.Ct. at 2567, needed to establish cause. The Public Defender now asks us to reject the district court's facially

sound reasoning and grant its request to withdraw.

We were faced with a somewhat similar situation in *Harris v. Vasquez*, 949 F.2d 1497 (9th Cir.1991) (*Harris* ), *cert. denied,* —— U.S. ——, 112 S.Ct. 1275, 117 L.Ed.2d 501 (1992). Harris had argued that the cause for his failing to raise a mental health claim in his first habeas petition was ineffectiveness on the part of his appointed counsel. Harris's attorneys had filed motions to withdraw to permit an investigation into their possible ineffectiveness in representing Harris during his first habeas corpus petition. We denied the motions based on the same reasoning relied on by the district court in this case: because there is no constitutional right to effective counsel during habeas corpus proceedings, "Harris's habeas counsel could not have been constitutionally ineffective as a matter of law." *Id.* at 1513 n. 13. The Public Defender contends that *Harris* is either wrong or not on point. The Public Defender cannot argue *Harris* was wrongly decided to this three-judge panel as *Harris* can be overruled only by an en banc court, a Supreme Court decision, or subsequent legislation. *United States v. Washington,* 872 F.2d 874, 880 (9th Cir.1989). We can, however, decide whether *Harris* governs this case.

■ The Public Defender first argues that *McCleskey* is inapplicable in the Orange County case because Bonin had not filed a second habeas petition, but merely a motion for relief from judgment pursuant to Rule 60(b); thus, according to the Public Defender, the reasoning of *Harris* has no relevance. We disagree and join the Fourth, Eighth and Eleventh Circuits in holding that because a Rule 60(b) motion following the entry of final judgment in a habeas case raises policy concerns similar to those implicated by a second petition, it is subject to the same cause and prejudice standard. *See Bolder v. Armontrout,* 983 F.2d 98, 99 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1070, 122 L.Ed.2d 497 (1993); *Jones v. Murray,* 976 F.2d 169, 172 (4th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 27, 120 L.Ed.2d 951 (1992); *Lindsey v. Thigpen,* 875 F.2d 1509, 1511–12, 1515 (11th Cir.1989); *but cf. May v. Collins,* 961 F.2d 74, 75–76 (5th Cir.) (ad-

dressing merits of 60(b) motion without applying *McCleskey* standard), *cert. denied,* —— U.S. ——, 112 S.Ct. 1925, 118 L.Ed.2d 533 (1992).

The Public Defender next contends that *Harris*'s statement that "[a]ttorney error will constitute cause ... only when it constitutes an independent sixth amendment violation," 949 F.2d at 1513, *citing Coleman,* —— U.S. at —— ——, 111 S.Ct. at 2566–68, sweeps too broadly, for several reasons. First, the Public Defender relies on *Chaney v. Lewis,* 801 F.2d 1191, 1196 (9th Cir.1986) (*Chaney* ), *cert. denied,* 481 U.S. 1023, 107 S.Ct. 1911, 95 L.Ed.2d 516 (1987), in support of the proposition that our cases establish a constitutional right, rooted in the Fifth Amendment's Due Process Clause, to effective appointed counsel in certain complex habeas cases. The Public Defender misconstrues *Chaney,* in which we stated that

> the Sixth Amendment right to counsel does not apply in habeas corpus actions. Indigent state prisoners applying for habeas corpus relief are not entitled to appointed counsel unless the circumstances of a particular case indicate that appointed counsel is necessary to prevent due process violations.

*Id.* at 1196 (footnote omitted), *citing Kreiling v. Field,* 431 F.2d 638, 640 (9th Cir.1970) (per curiam); and *Eskridge v. Rhay,* 345 F.2d 778, 782 (9th Cir.1965), *cert. denied,* 382 U.S. 996, 86 S.Ct. 582, 15 L.Ed.2d 483 (1966); *see also Hatfield v. Bailleaux,* 290 F.2d 632, 635 (9th Cir.), *cert. denied,* 368 U.S. 862, 82 S.Ct. 105, 7 L.Ed.2d 59 (1961); *Anderson v. Heinze,* 258 F.2d 479, 481 (9th Cir.), *cert. denied,* 358 U.S. 889, 79 S.Ct. 131, 3 L.Ed.2d 116 (1958). These cases do not establish a "due process right to counsel." Rather, *Chaney* addresses the question whether a district court abuses its discretion in denying an indigent petitioner's request for appointed counsel pursuant to 18 U.S.C. § 3006A(g), which gives the district court discretion to appoint counsel for indigents when it determines "that the interests of justice so require." *See* 801 F.2d at 1196. The answer *Chaney* gives is that the district court abuses its discretion when the case is so complex that due process violations will occur absent

the presence of counsel. *See id.* *Chaney* does not purport to declare that due process demands the appointment of counsel; it merely sets forth a standard for determining when section 3006A(g) so requires.

▆▆▆ Clearly, there is no constitutional right to counsel on habeas. *See Harris,* 949 F.2d at 1513–14; *Finley,* 481 U.S. at 555, 107 S.Ct. at 1993. There is, however, a right to due process. Under *Chaney* the absence or ineffectiveness of counsel does not in and of itself constitute a due process violation. *Chaney* indicates only that discretion is abused when appointment of counsel is "necessary to prevent due process violations" from occurring. 801 F.2d at 1196. If Bonin can demonstrate that his proceedings before the district court violated due process, he may be entitled to relief. But whether his right to due process was violated is an independent inquiry from whether his counsel was effective. In some complex cases where the district court abused its discretion in not appointing counsel under *Chaney,* a due process violation may occur on habeas that could have been prevented by effective counsel. However, in other cases, while no counsel was appointed or appointed counsel was ineffective, a habeas proceeding could still be conducted without any due process violations. The Public Defender's reading of *Chaney* is strained: it is in essence an attempt to include Sixth Amendment rights within the Due Process Clause in complex habeas cases. The Public Defender's argument is incorrect. Because our due process inquiry does not depend upon an analysis of the Public Defender's effectiveness, there is no threat that a conflict of interest will arise in the course of that inquiry.

▆▆▆ The Public Defender also directs our attention to language in *Coleman,* — U.S. at ——–——, 111 S.Ct. at 2567–68, that "compels the conclusion" that ineffective representation during state postconviction proceedings will constitute an independent violation of the Sixth Amendment, enforceable against the states through the Due Process Clause of the Fourteenth Amendment, where state collateral review is the first place a petitioner can present an effective constitutional challenge to his or her conviction; for

example, where a state permits ineffective assistance claims to be brought only in postconviction proceedings. The Public Defender apparently contends that Bonin had a Sixth Amendment right to counsel during his state habeas proceedings because that was the first forum in which he could allege constitutional ineffectiveness on the part of trial counsel. *Coleman,* however, does not "compel the conclusion" that such a right exists. Rather, the Supreme Court merely remarked that "[f]or Coleman to prevail, ... there must be an exception to the rule [that there is no right to counsel in state collateral proceedings] in those cases where state collateral review is the first place a prisoner can present a challenge to his conviction." *Id.* — U.S. at ——, 111 S.Ct. at 2567. The Court declined to address this question on the facts of the case before it. *Id.* — U.S. at ——–——, 111 S.Ct. at 2567–68. Furthermore, the Court explicitly stated that "[t]he effectiveness of Coleman's counsel before [the state habeas] court is not at issue here." *Id.*

There is a practical reason why we will not follow the Public Defender's recommendation. The actual impact of such an exception would be the likelihood of an infinite continuum of litigation in many criminal cases. If a petitioner has a Sixth Amendment right to competent counsel in his or her first state postconviction proceeding because that is the first forum in which the ineffectiveness of trial counsel can be alleged, it follows that the petitioner has a Sixth Amendment right to counsel in the second state postconviction proceeding, for that is the first forum in which he or she can raise a challenge based on counsel's performance in the first state postconviction proceeding. Furthermore, because the petitioner's first federal habeas petition will present the first opportunity to raise the ineffective assistance of counsel in the second state postconviction proceeding, it follows logically that the petitioner has a Sixth Amendment right to counsel in the first federal habeas proceeding as well. And so it would go. Because any Sixth Amendment violation constitutes cause, *McCleskey,* 499 U.S. at ——, 111 S.Ct. at 1470, federal courts would never be able to avoid reaching the merits any ineffective-assistance claim, re-

gardless of the nature of the proceeding in which counsel's competence is alleged to have been defective. As a result, the "exception" would swallow the rule. To obviate such an absurdity, we hold that the protections of the Sixth Amendment right to counsel do not extend to either state collateral proceedings or federal habeas corpus proceedings. *See Coleman*, —— U.S. at ——, 111 S.Ct. at 2568; *Finley*, 481 U.S. at 555, 107 S.Ct. at 1993; *Murray v. Giarratano*, 492 U.S. 1, 10, 109 S.Ct. 2765, 2770, 106 L.Ed.2d 1 (1989) (*Giarratano* ); *McCleskey*, 499 U.S. at —— – ——, 111 S.Ct. at 1470–71.

Next, the Public Defender points to dicta in *Coleman* to the effect that where the federal Constitution imposes on the state a responsibility to ensure that a petitioner was represented by competent counsel, the state must bear the cost of any resulting default. —— U.S. at ——, 111 S.Ct. at 2567. Although states are not required by the federal Constitution to provide counsel to criminal defendants beyond the first appeal as of right, *Ross v. Moffitt*, 417 U.S. 600, 610–11, 614–16, 94 S.Ct. 2437, 2443–44, 2445–46, 41 L.Ed.2d 341 (1974); *Finley*, 481 U.S. at 555–56, 107 S.Ct. at 1993, the Public Defender argues that because California law required that Bonin be represented by competent counsel during his state postconviction proceedings, *see People v. Barton*, 21 Cal.3d 513, 519 & n. 3, 146 Cal.Rptr. 727, 579 P.2d 1043 (1978) (*Barton* ); *People v. Shipman*, 62 Cal.2d 226, 231, 42 Cal.Rptr. 1, 397 P.2d 993 (1965) (*Shipman* ), and the Public Defender is itself a state agency, the state must be held responsible for its failure to provide Bonin with competent counsel during state habeas proceedings, on a theory of "state interference." The Public Defender is wrong for two reasons.

First, California law is not relevant. The *Coleman* dicta on which the Public Defender relies addresses only situations in which federal constitutional principles mandate that states provide counsel. *See* —— U.S. at ——, 111 S.Ct. at 2567. Second, it is not "California law" itself that has, in the past, extended a right to competent counsel to state habeas petitioners, but California's interpretation of the Fourteenth Amendment to the United

States Constitution. *Barton* relied on *Shipman* for the proposition that "the principles of the [United States Supreme Court's] Fourteenth Amendment cases apply whenever a state affords a direct or collateral remedy to attack a criminal conviction." *Barton*, 21 Cal.3d at 519 n. 3, 146 Cal.Rptr. 727, 579 P.2d 1043 (internal quotation omitted). In *Shipman*, the California Supreme Court reasoned:

> Although the United States Supreme Court has not held that due process or equal protection requires appointment of counsel to present collateral attacks on convictions, it has held that counsel must be appointed to represent the defendant on his first appeal as of right. Since the questions that may be raised on [collateral attack] are as crucial as those that may be raised on direct appeal, [Supreme Court precedent] precludes our holding that appointment of counsel in [collateral] proceedings rests solely in the discretion of the court.

62 Cal.2d at 231, 42 Cal.Rptr. 1, 397 P.2d 993 (citations omitted). So matters stood in 1965, when *Shipman* was decided, and 1978, the year of *Barton*. Since then, however, the Supreme Court has decided *Finley*, which firmly established that there is no federal constitutional right to an attorney in state postconviction proceedings, 481 U.S. at 555, 107 S.Ct. at 1993, and *Giarratano*, 492 U.S. at 10, 109 S.Ct. at 2770, which extended *Finley* to capital cases. On this point, *Shipman* and *Barton* cannot control.

The Public Defender also relies on Bonin's "due process rights under California law to competent counsel in state death penalty habeas corpus proceedings," the violation of which "provides the independent constitutional violation required by *Coleman.*" But the California cases on which the Public Defender relies, *Shipman* and its progeny, do not create a California state law right to counsel; rather, they interpret the federal Constitution as providing such a right. As we have just demonstrated, this reasoning cannot be reconciled with recent Supreme Court doctrine. Even if California's constitutional guarantees were interpreted to grant Bonin a right to counsel in state collateral

proceedings, the deprivation of that state-law right would not be the "independent constitutional violation" of *Coleman,* because *Coleman* referred only to violations of the *federal* constitution. *See* —— U.S: at —— - ——, 111 S.Ct. at 2566–68.

██ Lastly, the Public Defender argues that the Sixth Amendment right to counsel extended to Bonin's first state habeas petition because, pursuant to California procedure, this petition was filed at the same time as the first appeal as of right, to which the Sixth Amendment protections undeniably attach. *See, e.g., People v. Pope,* 23 Cal.3d 412, 426–27 n. 17, 152 Cal.Rptr. 732, 590 P.2d 859 (1979) (stating appropriate procedure for bringing ineffective-assistance claim in state habeas petition). The contemporaneousness of filing does not cause the constitutional guarantees present on direct appeal to be transferred to the state habeas proceedings as well, where they are otherwise inapplicable. Bonin never contended before the district court that counsel's ineffectiveness on direct appeal *itself* may have been the "cause" for his failure to raise the six new claims at an earlier date. Bonin's supplemental brief responsive to the district court's order that he must satisfy *McCleskey* 's cause requirement stated only that "the performance of ... counsel *at the time of the state habeas corpus proceedings* need[s] to be examined in light of the *McCleskey* standard" (emphasis added). As we have just reiterated, no constitutional right to competent counsel extended to this proceeding. It may be that the Public Defender is attempting to argue in its supplemental brief, for the very first time, that its performance as counsel on Bonin's direct appeal might have been inadequate. If so, we will not consider it because it was never presented to the district court in resolving the merits of Bonin's appeal from the Orange County case. *Cf. Willard v. California,* 812 F.2d 461, 465 (9th Cir.1987) (*Willard* ) (court of appeals declines to consider claims not presented in habeas petition).

██ As in *Harris,* the Public Defender has identified no point at which its alleged incompetence could have amounted to a constitutional violation. Thus, its ineffectiveness is no basis for any finding of cause to excuse the abusive claims presented in the Rule 60(b) motion, and under *Harris* the Orange County case presents no grounds for granting the Public Defender's request to withdraw. *See* 949 F.2d at 1513 & n. 13.

### B.

██ Because no final judgment had been rendered at the time of filing, the district court correctly did not rely on *McCleskey* when it denied Bonin's Los Angeles motion, as the issue of cause is not relevant. It may be argued that the district court abused its discretion in denying Bonin's motion to amend, because the Public Defender may be placed in the ethically troubling position of having to litigate the question of its own competence. But we are not faced with that issue. As we have stated, the Public Defender has identified two arenas in which its performance may have been sub-par: (1) Bonin's pursuit of collateral relief in the California courts and (2) the federal habeas cases from which he now appeals. It will be unnecessary for us to consider counsel's performance in either forum to decide these appeals.

The Public Defender represents that Bonin is likely to raise the incompetence of his state and federal habeas counsel in seeking a remand of the Los Angeles case. But such claims are not properly raised on direct appeal. *United States v. Robinson,* 967 F.2d 287, 290 (9th Cir.1992). In order to examine whether counsel's performance was egregious enough to amount to a deprivation requiring reversal, it is necessary to develop a record concerning counsel's actions, decisions, and motives during the proceedings in question. It is impossible to develop the requisite record on direct appeal, as this court cannot engage in such a fact-drenched inquiry.

██ True, if the record on appeal is sufficiently developed to permit review and determination of the issue, or if the legal representation is so inadequate that it obviously violates the Sixth Amendment, we have discretion to consider the claim. *Id.* Nevertheless, the ineffective-assistance issues supposedly present in this case are not straightforward. Nor does the record disclose any

obvious Sixth Amendment violation, since the Sixth Amendment is inapplicable to habeas representation, nor an obvious due process violation, since we have held that the Due Process Clause is not the appropriate vehicle for pursuing ineffective-assistance claims. Furthermore, many questions remain concerning the Public Defender's decision to delay the presentation of the six new claims. For .example, the record before us does not establish whether this delay came about by accident or stratagem. Finally, we observe that present counsel's alleged ineffectiveness was never even raised before the district court in the Los Angeles case as a reason for granting Bonin's motion to amend. We will not consider this issue on which the district court never had an opportunity to rule. *See Willard,* 812 F.2d at 465.

### III

Bonin has no ineffective-assistance claims relevant to the merits of either of these appeals. As such, there is no possibility that a conflict of interest stemming from such claims will arise during the course of our proceedings. The Public Defender's motion for reconsideration of its request to withdraw is, therefore, denied.

**MOTION DENIED.**